*355 The bill states that Henry Bailey, the complainant’s testator, executed his last will on the 7th day of Novem-her, 1784, wherein he desired that his personal estate might be sold at public vendue, and divided amongst bis family, consisting of his wife and three daughters, share and share alike: his wife to receive her part immediately on liis decease; and his daughters their parts at the- *356 age of 16 years, or the day of marriage, which should first happen; but in case any of his children should die before they attained the age of 16 years, or the day of marriage, then their parts or portions.should go to his sur» viving children or child: and further, that when his youngest daughter should attain the age of 16 years or the day ma™aSe? then rea'- estate should be sold at public vendue, and the monies arising from such sale, to be equally divided share and share alike amongst his three daughters, to them and each of them and their heirs for-evcr° “ But if it should so happen that oil his children should die, leaving no lawful issue of their body, then one half of states and portions he gave and bequeathed to his lo-ring wife Mary Bailey and her heirs forever; and the other half to his loving nephew Archibald Calder, and'to his heirs forever. That the said Henry Bailey constituted the said Archibald Calder, Andrew Townsend, and James Clarke, executors. That the said Henry Bailey soon after died, leaving his will in full force and virtue. That the said Archibald Calder was the only qualified execiitor of said will. That after the decease of the said Henry Bailey, two daughters, Mary and Elizabeth, departed this life under the age Of 16 years, unmarried, and without is-suc! whereby their shares of the said estates became vested in the surviving daughter. That the said surviving daughter Sarah Bailey, intermarried with the coihplain--^ho became tliereby entitled to the legacies bequeathed to his said wife. That some time in the month of July, 1774, the said Archibald having previously sold and disposed of the real and personal estate of the said Henry Bailey, came to a settlement with the complainant William Reynolds, and they agreed that the said William Reynolds was entitled to receive the sum of of 6339k 5s. Ad. current money of the (then) province: that upon application made to said Archibald Calder to make payment of said legacy, he refused, unless the complainant William Reynolds would execute proper deeds and bonds obliging the complainant to return the amount of said legacy in case his wife died without leaving lawful issue. That the complainant not knowing the said Archibald to *357 be a residuary legatee to one half of said estate, and reposing confidence in his integrity, executed a certain deed, demanded by said Archibald, bearing date 26th July, 1774, whereby he hound himself to said Archibald to return and repay the said sum of money in case the said Sarah his wife died leaving no lawful issue; and also entered into a bond in the penal sum of 63S9J. 5s. 4d. on the said 26th July, 1774, for the performance of the above condition; that thereupon the complainant received pay - ment of his legacy; and that he had issue bora alive by his said wife Sarah, some time, in the month of , A. D. 1784, which lived about six months and departed this life. That the complainant's wife departed this life in the year 1789, without leaving any issue alive. That. Mary Bailey, the wife of Henry Bailey, hath departed this life after the death of her said daughter Sarah, and leaving three children by her second husband, Mr. Ed-dings; and that Um said Archibald Calder hath also de« parted this life A. B. 1777, leaving a son a minor, and a daughter, and appointed Ephraim Mikell, Thom a:; Whally, Ralph Bailey, and Joseph Seabrook, executors of his last will and testament. That since the, death of the, said Archibald Calder and Mary Bailey, widow of Henry Bailey, and of Sarah, the complainant's wife, a suit has been commenced by the executors of said Archibald, against the complainant William Reynolds, on the aforesaid bond, in the court of common pleas, in Beaufort district, which suit is now at issue depending for trial in said court and district. The hill therefore prays a perpetual injunction, as the complainant contends the limitation over is two remote to take, effect; and that he ought not to have been required to give the said bond.
The executors of Archibald Calder, executor of Henry Bailey, admitted all the facts stated in the bill of coni plainant; but they contended that as Sarah, the daughter of Henry Bailey, and wife of complainant William Res • molds, died without leaving any issue alive, the limitation overtook effect; and the defendant's testator, Archibald Calder, being a residuary legatee, they hope they may be permitted to continue to prosecute this suit at law, ami *358 that the bill may be dismissed with costs. The case came’ to a heaving, and was argued by Mr. Ford for complainant — and general Pinckney and Mr. Rutledge for de-fondailt.
Deerce.
Mr. Ford. The testator meant to make a dictinctioft between his real and personal estate. The first clause makes a complete bequest, and ought not to be affected by the subsequent restrictive clause, which relates to the real estate. The time of vesting of the real estate is different from that of the personal estate. The personal was to vest when his children reached 16 years of age or day of marriage. The real, not till all his children should, die without issue. This is such an indefinite failure of’ issue, as is too remote and void.
Mr. E. Rutledge and general Pinckney for defendant. The limitation over is not too remote: it is within the rule of a life orlivcs, in being, and 21 years of age-. See Fearne, 353. 1 P. Wms. 663, Forth vs. Chapman. And many cases decided in this court — Sams and Mathews — Elliott and Elliott — -Logan and Ladson, and Keating’and Reynolds in the common pleas.
The. question arises on the will of H. Bailey, father of complainant’s late wife. It is, whether the words of limitation contained in the 2d clause, pervaded the 1st clause, so as to render bequests contained in the 1st clause, subject to the limitations in the 2d, notwithstanding they are very different from the limitations of the 1st clause, or whether the 2d clause was not so' totally distinct, both as to the property conveyed, and the limitations, as to make them totally different. By the 1st clause, the. testator directed his personal estate to be equally divided between his wife and three daughters, M. S, and E. to them, and each of them, and their heirs forever. The wife to receive her portion immediately after his decease, and the daughters their’s at the age of 16 years, or day of marriage; and if any of them should die before the age of 16, or day of marriage, their portion to go to the survivors. The 2d clause begins with an “item,” and goes on to provide, that when testator’s youngest daughter should attain 16 years of age, or day of mar- *359 ríage, “then all my real estate shall he sold, and the money equally divided between my daughters M. S. and E. to them and their heirs forever.” “But if alliny children die, leaving no lawful issue of their body, then one half of their estates and portions I give to my wife and her heirs foi’-ever; and the other half to my nephew' Archibald Caldcr and his heirs forever.” Two of the daughters died under 16 years of age and unmarried;- one of them attained 16 years of age, and married the complainant ~SY. Itey-nolds, and then died without issue. The husband filed this bill to recover the personal estate bequeathed under the 1st clause to the three daughters. The 1st clause is a complete disposition by the testator of so much of his estate, as was comprehended in the clause, to his daughters, who, in certain contingencies, were to have benefit of survivorship. The. question is, do the limitations in the 2d clause which spoke of different property, defeat the 1st estate under the 1st clause, by converting the, estate bequeathed to the daughters in the 1st clause, into a mere life estate, with limitations to the. wife and nephew. The use of the word item, in a will, is construed a conjunctive, as and, or also, to connect sentences together. It lias never been construed a disjunctive, but is only made use of to distinguish the clauses of the will. See 1 Atkins, 438. The. 1st clause not only designates a distinct estate and property from the 2d, but all the parties are not the same. The court cannot think then they are bound by any rule of law to connect these clauses, so as to attach the limitations of the 2d clause, which arc very different from those of the 1st, to the property contained in the 1st; nor does it appear that testator meant to do so — but rather the contrary. And as one of the daughters did attain 16 and day of marriage, and also survived her sisters, the court is of opinion that she took all the property contained in the 1st clause, not controlled by the words of 2d clause, and on her death without issue, it goes to her husband. The other clause takes effect, and the, property goes over to the wife and the nephew,, Decreed accordingly, and costs divided*